Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. The carrier on the risk is Employers Insurance of Wausau.
4. The parties stipulated to an Industrial Commission Form 19 dated 9 November 1994.
5. Plaintiff's average weekly wage per Industrial Commission Form 19 is $578.40, yielding a compensation rate of $385.80.
6. The parties stipulated to plaintiff's recorded statement of 11 May 1995.
7. The parties stipulated to plaintiff's medical notes from Cape Fear Memorial Hospital; Bladen County Hospital; New Hanover Regional Medical Center; New Hanover Medical Group, including the notes of Drs. Dewey H. Bridges and Charles B. Herring; Carolina Neuroscience Specialties, including the notes of Dr. Donald J. Solomon; Carolina Neurological Surgery, including the notes of Dr. David Miller; and Coastal Rehabilitation Hospital of New Hanover Regional Medical Center.
8. The issues before the Deputy Commissioner were:
 a) Whether plaintiff sustained an injury by accident to his back arising out of and in the course of his employment on 14 September 1994?
 b) Whether plaintiff is entitled to any temporary total disability compensation beginning 8 June 1995 through to the present?
 c) Whether plaintiff is entitled to any permanent partial disability compensation per a disability rating that may be assigned by plaintiff's treating physician?
 d) Whether plaintiff is entitled to any medical treatment for his back?
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old and had worked as a maintenance mechanic for defendant-employer. Plaintiff's duties included electrical work, plumbing and pipework.
2. Plaintiff began working for National Starch and Chemical Corporation in May 1979. In January 1994, National Starch and Chemical Corporation was purchased by CT Specialties Corporation.
3. Plaintiff suffered a previous injury to his back at work on 22 October 1992, for which he received conservative medical treatment in November 1992 and was released on 11 November 1992 after two appointments.
4. On 14 September 1994, a mechanical seal blew off an OR-6 vessel at defendant-employer's plant. Plaintiff was working with his supervisor, Norbett Barrett, to replace the damaged seal. To replace the vessel's seal, plaintiff stood on top of the vessel and attempted to remove the Allan-head nuts with a ratchet wrench. Plaintiff's ratchet wrench broke, causing plaintiff to slip and strike his elbow against a steel valve. Plaintiff did not hit his back and did not complain of back pain at that time.
5. Plaintiff immediately experienced pain in his right elbow and reported the injury to Mr. Barrett. Plaintiff completed his normal work-shift on 14 September 1994.
6. Plaintiff continued to work for defendant-employer through 8 June 1995. Throughout this period, plaintiff complained primarily of pain in his right upper extremity.
7. On 8 November 1994, plaintiff presented to Charles Herring, M.D. Plaintiff reported that he had struck his right elbow on a pipe and was experiencing pain and occasional numbness in his right arm. Dr. Herring referred plaintiff to Dr. Donald Solomon, a neurologist.
8. On 22 November 1994, plaintiff presented to Dr. Solomon. Following examination, Dr. Solomon believed that there was little to suggest a cervical lesion and that the symptoms were most likely musculoskeletal in origin. Dr. Solomon recommended plaintiff undergo EMG/NCV studies.
9. On 15 December 1994, Dr. Solomon reported the EMG/NCV's were normal. Plaintiff's neck had a full range of motion without tenderness or radiating pain. Dr. Solomon recommended plaintiff undergo further testing, including an MRI.
10. On 6 April 1995, an MRI was conducted on plaintiff. The cervical MRI revealed degenerative disc and bony changes with bulging at C5-6 and right paramedian C6-7 disc herniation. The remainder of the cervical spine was normal.
11. Plaintiff informed Dr. Solomon that his elbow, not his back, struck the steel valve. Throughout his treatment by Dr. Solomon, plaintiff never complained of back pain.
12. While Dr. Solomon agreed that plaintiff's cervical disc degeneration and spondylosis were not caused by a blow to his elbow, he did not offer any definitive opinion as to whether the 14 September 1994 injury caused plaintiff's C6-7 herniation.
13. On 1 May 1995, Dr. Solomon referred plaintiff to Dr. Daniel Miller, also a neurologist.
14. On 8 June 1995, plaintiff presented to Dr. Miller. At this appointment, plaintiff reported that he had injured himself at work and struck both his back and elbow on steel piping. At this visit, almost nine months after his 14 September 1994 incident, plaintiff first complained of right leg and low back pain. Dr. Miller recommended that plaintiff undergo a myelogram and post-myelogram CT of the cervical and lumbar area. Dr. Miller also took plaintiff out of work on this date.
15. On 13 June 1995, plaintiff underwent the myelogram. The test showed multilevel cervical spondylosis, most marked at C5-6 and C6-7, with significant central canal stenosis. In the lumbar area, the test revealed diffuse degenerative changes with stenosis at L4-5 and L5-S1 and disc changes, especially at L4-5.
16. Plaintiff continued to treat with Dr. Miller. By 28 September 1995, plaintiff's neck and arm pain had resolved with conservative treatment. Following 28 September 1995, Dr. Miller continued treatment for plaintiff's lower back complaints. Plaintiff underwent a course of epidural injections on 10 October 1995, 17 October 1995, and 30 October 1995.
17. By 16 November 1995, plaintiff's radiating leg pain had resolved and he was only experiencing low back pain on the left side. Dr. Miller recommended further physical therapy and an anti-inflammatory medication.
18. Plaintiff was last seen by Dr. Miller on 12 December 1996, when plaintiff reported doing better with conservative treatment of his neck and back and that his legs and arms remained without pain. However, Dr. Miller believed that plaintiff would require continued conservative treatment in the lumbar region and possible surgical treatment in the cervical region.
19. At his deposition, Dr. Miller testified that it was possible that plaintiff's cervical stenosis and spondylosis existed before the 14 September 1994 accident and that it was as likely as not that the L4-5 and L5-S1 changes existed before the 14 September 1994 accident. He also offered his opinion that plaintiff's 14 September 1994 accident was not a significant trauma and that plaintiff's diffuse degenerative cervical and lumbar changes were the result of a degenerative ongoing process rather than the accident on 14 September 1994. It appears that Dr. Miller may have had the opinion that it was "equally likely" that plaintiff's cervical and lumbar conditions were related to degenerative disease rather than to the 14 September 1994 accident, but that portion of his testimony is unclear.
20. Plaintiff's cervical and lumbar spondylosis, stenosis and degenerative disease pre-existed the 14 September 1994 accident.
21. Plaintiff did not sustain a significant trauma to his back or neck on 14 September 1994.
22. The evidence is insufficient to show by the greater weight that plaintiff's cervical or lumbar problems were caused or aggravated by the 14 September 1994 accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident to his right elbow arising out of and in the course of his employment when he slipped off the top of a vessel and struck his right elbow against steel piping. N.C. Gen. Stat. § 97-2(6).
2. As plaintiff did not miss time from work due to his injury by accident to his right elbow, he is not entitled to temporary total disability compensation. N.C. Gen. Stat. §§ 97-28,97-29.
3. Plaintiff is entitled to have the defendants pay for all of his medical expenses incurred resulting from the injury to his right elbow on 14 September 1994, to the extent that such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief, or tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Plaintiff has failed to prove by the greater weight of the evidence that the 14 September 1994 accident in which he struck his elbow either caused or aggravated his cervical or lumbar conditions and resulting complaints. N.C. Gen. Stat. § 97-2(6).
5. On 14 September 1994, plaintiff did not sustain an injury by accident to his back arising out of or in the course of his employment, or as a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
6. Plaintiff failed to prove by the greater weight that he sustained a change of condition to his previous injury as a result of the 14 September 1994 injury by accident to his right elbow. N.C. Gen. Stat. § 97-47.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER AND AWARD
1. Defendants shall pay medical expenses incurred or to be incurred by plaintiff as a result of plaintiff's injury by accident to his right elbow for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tend to lessen plaintiff's disability.
2. Plaintiff's claim relating to his cervical and lumbar regions is DENIED.
3. Each side shall pay its own costs, except that defendants shall pay an expert witness fee of $140.00 to Dr. Solomon.
 *********** S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER